Good morning, everyone. This is the Council. Again, our final morning in Omaha this week. And again, a reminder to Council that the sound system is not functioning, so please speak up so we can make sure that we hear your presentation accurately. And Mr. Key, I think we'll dispense with the announcement of the full calendar and you can call our first case. First case for argument, case number 22-1759 from Nebraska, United States v. Rufus Dennis. Counsel. And Mr. Keel, you may proceed. I made a plea to the court, justices, opposing counsel. My name is Joseph Keel and I represent the attorney in this matter, Rufus Dennis. I made a number of arguments in my brief, but I want to focus on three main points before you today in the time that I have. One, I believe, is the first argument in my brief that the trial court erred when it overruled the trial counsel's motion for dismissal based on lack of proving a substantial step. I want to start with the government's brief. The government's brief points to a case, United States v. Johnson. And I absolutely agree with the government that that is an attempt. The activists in Johnson were planning to rob banks. In an effort to do that, they surveilled the banks, even going into banks. They secured weapons. They stole cars as getaway cars. They stole license plates to cover their tracks in those stolen cars. They were parked outside the bank, presumably ready to go rob a bank within minutes, when they saw law enforcement and abandoned the plan. That's a long ways away from what we have in this case. This is a unique case in that the tapes really told the story. I mean, there isn't much factually in dispute here. I mean, we know what Mr. Dennis said. We know what the informant said. We know through those words what their plans were. But what they did is they surveilled. I can't get around that point. If there were four or five times they went to this target location, they surveilled it. That absolutely happened. I think the government will point to the fact that there was also the plan to buy handguns. Once again, those words came out that that was a plan. I think it's more telling, though, what was not done. Mr. Dennis could not have been more clear that he was not going to perform this robbery without a handgun. It just couldn't be done. And the government stopped Mr. Dennis and the informant before he bought that handgun. Does it matter, though, that he arranged for the trade itself, like he actually had a trade set up for the handgun? That's my understanding of the fact. You could correct me if I'm wrong. No, I believe that's true. And so I do. I think it matters more, honestly, that it didn't happen. I mean, I'll be honest with you. I think I have a really hard argument on this issue if the government had allowed Mr. Dennis to purchase the handgun. Once again, the only thing that had to happen for this robbery to take place. If that had happened, my argument is really tough. I'm not going to concede that it wasn't a pretend thing, but I think it's a crucial piece. I do. We don't know whether or not this was going to be a daytime or nighttime robbery. That would have affected what the plans were, disguise versus no disguise. We don't know what day this was going to happen. And here's something that I also think is important on this point, is that the government had the informant. They presumably knew the exact second this robbery was going to happen. I mean, if Mr. Dennis and the informant had made a plan, a sufficient enough plan, that this was going to happen on Wednesday at 10 p.m., the government would know that. Saturday at 8 a.m., the government would have known. They could have stopped it then. And my position on that issue is that the government just acted too early, not allowing the parties to effectuate that substantial step and move beyond the mere incarceration stage. Do we look at the steps going up cumulatively in the sense that maybe this case – I guess the question is this case would have been different if the gun was the only issue. But here we have the work vests tried on. We have breaking into trucks parked near the drug dealers' home. And so there were a lot – I mean, and then the steps you mentioned, there were a lot of steps taken. So do we look at that cumulatively, or do we just say, well, it didn't get the gun, the gun's necessary, no substantial step? I think there is a cumulative look at it. I mean, once again, these cases would be easy if I hold facts in my favor. I just don't. And so, yeah, I would agree that this is a cumulative approach. And unfortunately, those steps were taken. My position is just that the key step was not taken, and there were other ones that were not taken. And we just didn't cross that. I believe Johnson uses the term shadowy line. We just didn't cross that shadowy line from preparation into a substantial step. If I may, I want to move on to the second point I want to make, which is the argument that trial counsel was ineffective for essentially failing to excise the word murder from the trial, to keep from the jury that Mr. Dennis had a prior murder conviction. And I'm going to start with the government's brief again. I think the government's brief makes two points. One is that this is rare for a court to decide this matter out directly. And that's true. There's a federal mechanism to more fully develop the record on these issues, and the government's position is that's the mechanism that should be used. The government also says that, in fact, the record is not developed here. But I want to make a couple points about it. One is that I'm willing to give the government kind of every benefit of the doubt here. I think the government's position is there was a change of plea hearing that was set, and we don't know why it was canceled. And that's a legitimate point. But my position is that doesn't matter. Assume for a second that trial counsel wanted to have Mr. Dennis admit to being a felon in possession to remove the word murder, and Mr. Dennis said no. That's kind of the facts that would hurt my argument the most. And I'm willing to assume that, even if that happened, trial counsel still could have made a motion to eliminate for the jury not to hear that Mr. Dennis had a prior second-degree murder conviction. And to do so was deficient. And I want to make a couple points about the prejudice. Trial counsel himself tells us how prejudicial it was that the jury heard that Mr. Dennis had a prior murder conviction when he makes the motion for mistrial. And he makes that motion for mistrial when the informant says, I was, in fact, afraid of Mr. Dennis because he had committed murders. I think he said murders plural. Trial counsel moves for mistrial. He kind of makes all the arguments that I have made in my brief and I'm going to make today. That just gutted my entire defense. It's over. I can't sell that this was fantasy to this jury when they hear that my client has a murder conviction on his back. He makes that argument in his motion for mistrial. It's the same one I'm making today. Additionally, I think the trial court tells us how prejudicial it was. In their sentencing statements, I could have gotten this elsewhere, but once again, I'm relying on the government's brief just because they have it on page 28. And I want to read just a few sentences from what the trial court said on this. It wasn't on this issue, but I think it now pertains to this argument. I understand trial counsel's argument. I don't agree with it, having sat through the trial. I think but for the police intervention in this case, there was the likelihood of a tragedy. I mean, we talk about there absolutely going to be a home invasion. But when I listen to and look at what was said in the time leading up to this, from a gentleman who was on parole for second-degree murder, and it goes on. That's not the end of this kind of narrative, of course. But the court is telling itself. Once I knew he was a convicted murderer, I can't believe this anymore. I just didn't believe what you trial counsel were selling me. And so, once again, I acknowledge that this is rare. I acknowledge that the record is not fully developed on this issue. But what is developed, there just can't be an explanation for it. There can't be an explanation for trial counsel gutting their entire defense by failing to file a motion to eliminate to prevent more murders. I see I'm getting a little bit low on time. I want to move on to my third point, which I will admit to the court was the one I struggled with the most. And this is essentially the interstate commerce argument that I make in the brief. A couple points I want to make about this is I think Hugh S.V. Taylor is the case. I cite to it. I think the government cites to it. And unfortunately, it says attempting or robbing drug dealers has an impact on interstate commerce. Because the point is there. I can't get around that. I do want to make a couple points. So I think the dissent by Justice Thomas, I believe, is powerful. I cite to it in my brief. I'm not going to read it to you now, of course, because it's long. But I think it's powerful and well-reasoned, well-written. I'm not the smartest attorney in the world, but I hope I'm not the dumbest. If I were up here relying on dissents, I think I'm in trouble. So I wouldn't have made the point about the dissent if I weren't going to make point number two, which is that they weren't drug dealers. My client and the informant were mistaken about who lived in that house. And so even if Mr. Dennis had performed absolutely every act he talked about on those days, he would not have had the impact on interstate commerce. It was impossible. There was no potential impact or probable impact, which is what the law requires. It just, it was an impossibility. He was mistaken. And this is the part I wrestled with, is that, well, is his mistake a defense? I guess if the government's going to bring that up, maybe you were thinking that as well, but I think that's kind of the next logical step and the part I struggled with. And here's my point. Normally a mistake of fact would be Mr. Dennis coming to the government saying, whoa, I'm sorry, those people I brought up, I didn't know they were drug dealers. I thought it was Joe Glow's citizen, no idea that they were drug dealers. That's the normal mistake of fact defense. But here we have the opposite. Mr. Dennis thought he was going to do that, but he just wasn't. It was an impossibility based on the set of facts, and therefore the government is just unable to supply the fact that there was an impact on interstate commerce. Those are the comments that I prepared in the amount of time that I have. Well, I have a question for you. Sit down. On this issue involving the crime of violence question, 924C, both sides agreed that there's error on this point. So what do we do with that? Well, my position was that assuming you lose on the other things. Even if I lose on the other things, my position is that I think we need to go back for resentencing. I think that's the way to fix this. I think the government wants to say, you got 60 for that count, just cut out 60 and move on. That makes sense. I agree. But I just don't think there's a way for us to fully know what trial court was thinking, how much impact that might have on sentencing. So my position is that if I lose on everything else and that's the only issue I went on, then Mr. Evans needs to have another resentencing, or another sentencing hearing. Thank you. Okay. Thank you, counsel. Ms. Woods. May it please the court and opposing counsel, thank you for your time this morning. I want to begin with sufficiency of evidence. And I want to talk about the lens through which we view the trial evidence first. And that is in a light most favorable to the guilty verdict. Specifically, I want to quickly summarize for the court what we believe is the evidence that there was a substantial step taken. But before I begin with that summary of facts, I want to reference back to what a substantial step is and what it is not in case law. It is not the last necessary act to complete the crime. Counsel respectfully described getting the gun as the last necessary act. That is not what the law requires us to show. And there are certain obvious public policy reasons why the law is not that way. Are we required to let someone as dangerous as Mr. Dennis have his hand on the front door of that home before the FBI acts to prevent loss of life? That would make no sense. In addition to that, we have the facts here. Mr. Dennis recruited someone to go through the home invasion with him. He, in addition to that, made specific arrangements to get the exact gun that he wanted because the rifle that he already possessed was too conspicuous to approach that home in that neighborhood. In addition to that, he tried on disguises. He adapted his plan as he surveilled the home. It started out as a daytime robbery where disguises would be used so he could pose as a utility worker. But as he surveilled that young mother and her two children, he developed a different plan to go at night. There were specific drug dealers that they studied in the neighborhood. And those were drug dealers as described by the CI who knew the neighborhood, Mr. Conway who testified, as well as in the recordings. That would be ROC and FL in the jury instructions. Mr. Dennis has never challenged the jury instruction that included ROC and FL by name as drug dealers that could be the target of the robbery. If we agree that Taylor applies and specifically, of course, the marijuana Taylor case versus the Taylor case that evaluated crime and violence, then by counsel's own definition, we have satisfied the law on this point because we have here targets of the drug, targets who are drug dealers that were in the jury instruction. We view the verdict in a light and disfavorable. The jury could have concluded that ROC and FL were also targets. We heard evidence at trial that the vehicles he was breaking into on the property, those belonged to one of the target drug dealers. He used that lot with the victim's consent. So he was actually trying to break into the vehicles of that individual when he went to the property on his own. And that fact, I would argue, is significant for this substantial study. He goes to the vehicle on the property without the CI. That was the first time the law enforcement saw he was willing to go on his own to the target home. What does that indicate? They can no longer control the situation. They cannot wait for the CI to say he's going today. I would respectfully disagree. The record does indicate that there was a specific day it was planned and he was arrested the morning of it. We actually spent nearly a day at trial on that issue. Counsel vigorously crossed the CI about that, concluding that there was a video, ultimately, where they discussed the exact day. And they met up that morning, the CI and Mr. Dennis, and he was taken down as they met up that morning to go there. So I would argue that he was arrested in a manner that is consistent with Johnson. I would argue the disguises, the surveillance, the gun deal, recruiting someone to do it with you, going to the property without the CI to break in, that is a substantial step. That fits with Johnson. It fits within the framework of the Eighth Circuit on that point. I kind of addressed the interstate commerce aspect, but I just want to be clear, and I apologize because I noticed that one of my aided sites would have referred back to Foster when I was quoting Taylor, so I just wanted to apologize to the court for that mistaken citation. But the Taylor quote says that when a target of a robbery is a drug dealer, you don't even have to threaten commerce. We consider that word in light of the potential or probable impact. There doesn't have to be a threat. It was part of the jury instruction that was not challenged that Dennis' belief was sufficient, and his belief is laid bare in the reportings. When we consider ineffective assistance of counsel, it is the exceptional case. And as we stand before you, we are discussing hypotheticals. We are discussing why was the plea hearing canceled? And one point I wanted to make right up front is that it is my understanding that counsel is arguing to you that trial counsel could have on his own tried to stipulate to the murder conviction following an all-chief analysis to keep that out of the evidence. However, you need your client's agreement to do that. You cannot have stipulation without Mr. Dennis' agreement, and we don't know if trial counsel advised him to do that for his own sake, and he refused to listen to his attorney. The record is not addressive at all, and we cannot make a ruling based on hypothetical speculation, and I believe that is likely why the courts have developed the case along the way that they have, that we need to have a record to make those determinations, and we just don't have one here. We don't know if he wouldn't stipulate. We don't know if he is the one who canceled the hearing because he wanted to fight everything, and if so, the entire attorney's hands in that situation, and we need to know that before we rule. In addition to that, we consider, should we get to that point, the prejudice under Strickland is an issue for the defendant that he cannot get around. There was overwhelming evidence in this case. I want to go to sentencing next. I believe most of counsel's arguments in the brief are focused on the guidelines. However, I think the record is very clear. The Chief Judge Rossiter relied on 18 U.S.C. 3553A in determining this sentence. When that is the situation, we also talked about his specific finding, that before the police intervention in this case, there was absolutely going to be a home evasion, and he does discuss the prior conviction in that determination and finding. However, we're at sentencing. That's expressly allowed and authorized by the law at sentencing, so Chief Judge Rossiter's sentencing findings cannot be used to go back and evaluate whether his prior conviction should have been discussed at trial. Furthermore, he put his own prior conviction at issue. There were recordings played where he discussed his prior conviction as motive for how violently he would commit this home evasion, why he would leave no witnesses, how far he would have the plea after the fact. His prior conviction was at issue through other ways and means. Additionally, under Rahif, the government now has to show that a defendant is aware that what he was convicted of truly prohibits him from possessing weapons. I think that raises some questions currently about whether that authorizes us to use evidence of prior convictions that we would not have been able to prior to that decision because our burden is now higher to show what that defendant knows about his own criminal history. Well, counsel, on the first point, and we're trying to decide, make a decision as to whether factually the jury is supported in concluding that preparation crossed over to actual attempt, which as I understand it is really the question that we have. There's the case that calls it a shadowy line. What about the fact, and how does this play in, that when you look at this evidence, this cooperating informant, Conway, seems to be playing a very large part in this planning. Might even argue that he was really the driving force behind this operation. Can that, is that a factor that goes into the mix here? Your Honor, I think that's fair for the court to consider. However, I think when we look at specific actions that were taken, such as trying on disguises, coming up with specific things that would be said or done, going to the property and breaking into the vehicles, those were all actions of the defendant. And there are conversations where Mr. Conway makes suggestions and the defendant responds, but there are also conversations in the record where the defendant makes plans and the defendant suggests that there will be no witnesses remaining and that he will take specific actions within the home. There is definitely conversation back and forth, and I think it's fair and appropriate to consider the whole totality of the circumstances. One of that remains a substantial step. If the defendant took plenty of actions all on his own, including recruiting Mr. Conway initially, the defendant went to Mr. Conway to commit the crime. He had the target, he had the plan to commit the home invasion, and he asked him to join him in that plan. So I think that is the crucial beginning of that criminal relationship. It can't be a conspiracy because he's a CI, but that is where we begin in this crime. And I think because Mr. Dennis sets the events in motion and then he goes back to the property on his own to get into vehicles on the property, that Mr. Dennis has taken sufficient acts of his own choice in choosing for the court to find him to assist. Is the recruitment conversation recorded? No, Your Honor. We heard testimony of that from Mr. Conway, but given that the jury is the person who evaluates his credibility and considers that issue, and of course I know we're sort of talking about it, but the defendant has never at any point on appeal or otherwise raised entrapment. But I believe that the jury is allowed to consider Mr. Conway credible on that point of testimony. Thank you, Your Honor. And I wanted to go back to sentencing because I know that what we have also not set out loud is the sentencing packaging doctrine, which when I read the defendant's replies, essentially I believe what he's referring to, even though we are not saying it out loud. And on that point, and I actually have another murder trial that's before the court on a separate case that also implicated Taylor because it was a home invasion where another was killed, and so that's also being considered due to the Supreme Court's ruling. And in that case, I did raise it. And here we have a unique situation where we have an upper variance where we have already secured a significant sentence on the Hobbs Act statute, and so that is why I did not raise it. But I have no issue if the court wants to apply the sentencing package doctrine and that's what the defendant wishes. I have no objection to that whatsoever. I think it's fairly likely from our perspective he will get more time if we apply that doctrine. So we do not object to it at all. For instance, the guidelines don't consider the firearms when there's a 924C, but now they will on resentencing. So if the court chooses to apply that, I understand and we'll be ready to remand for resentencing if necessary. But I don't believe the defendant has raised any other credible sentencing issues. Respectfully, attacking the guidelines analysis is not really on point for how the judge made the determination, and there has been no indication that he abused his discretion when evaluating 18 U.S.C. 3553A, and it is the unusual case where a guidelines, above or below guidelines sentence is reversed for those purposes under case law. So I don't think we've heard anything unusual about how Chief Judge Rossiter applied 18 U.S.C. 3553A, so I'd argue he has not abused his discretion on that point, and that if we remand it, it's kind of on the point until we go again. But at the same time, if you choose not to apply the sentencing packaging doctrine, I would respectfully ask that you find Chief Judge Rossiter did not abuse his discretion when he looked at this case in light of the sentencing statute. Thank you for your time. Thank you. Thank you. Mr. Keogh, table number three, Nick. Thank you, Justice. I do have just a few clarifying points that I wanted to make. And I'll admit, sometimes I can just be a little imprecise when I say things, but I want to be clear that I don't think the government needed to wait until the last necessary act. I think that's what the jury instruction says. They don't need to wait until that. But my point about the gun was it was the only necessary act. And it wasn't effectuated. So I wasn't saying that that had to be the last one, but my point was it was the only one. On the ineffective assistance of counsel claim, I agree with the government. Trial counsel can't make Mr. Dennis admit or plead anything. Mr. Dennis clearly has to be a part of that. But I'm assuming all the facts that would hurt my argument the most. Even though that it was Mr. Dennis that did not want to go through with the change of plea hearing, there were still things that trial counsel could have done to excise the wooden ruler from the trial that were not done. He could have done those without the stipulation of bringing Mr. Dennis, and my argument is that he should have. Those are the only points I wanted to make in the rebuttal. Well, I wanted to ask you about the sentencing package issue because I was going to ask and I just wonder whether the government is right here. We see these kinds of things happen where it gets sent back down and now that the district court can consider more, you might end up getting 30 months of that back. Now, you have to do what your client potentially wants to do, but I just want to be clear that you still want to do the sentencing package approach and send this back. You're right. I'm obligated to do what they think is the most appropriate. I know that's really vague and not very helpful probably, but you're right. I'm obligated to do what my client wants me to do. That's what I've been instructed to ask for. That's what I did ask for. If that results in more time for Mr. Dennis, that's the dumbest move of all time and I would not have wanted to do it, but not a very helpful answer. I'm sorry. No, it's fine and it's honest and I thank you for your candor. Thank you for your arguments this morning, counsel. The case is submitted and we will have a decision as soon as possible. With that, you may stand aside.